IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **NOLAN KINARD FLOYD, SR.,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-630 |
| **NICHOLAS ENYIOMA,** *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM**

Nolan Kinard Floyd, Sr., who is proceeding without counsel, filed suit for damages pursuant to 42 U.S.C. § 1983 against Captain Nicholas Enyioma, Lieutenant Amos Ogunbiyi, and Correctional Officer Omolade Oyekoya.[1]  ECF 1, 7.  Floyd alleges that on March 25, 2020, the defendants failed to protect him from assault by another inmate and then violated his due process rights by improperly issuing him a rule violation.  ECF 1, 7.  In response, the defendants move to dismiss or, in the alternative, for summary judgment.  ECF 24.  On November 22, 2022, the Court mailed Floyd a notice that if he failed to respond to the motion, this action could be dismissed. ECF 25.  To date, Floyd has not responded to the defendants' motion.  No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons stated below, the defendants' motion, treated in part as a motion to dismiss and in part as a motion for summary judgment, is granted.

**I.   Background**

The following facts are taken from Floyd's verified complaint and supplement and the exhibits attached to the defendants' motion for summary judgment.  On March 25, 2020, Floyd was a pretrial detainee at Maryland Reception, Diagnostic and Classification Center ("MRDCC"),

---

[1] The Clerk shall amend the docket to reflect Oyekoya's full name.

housed in cell 7-B-10.  ECF 1, at 3.  Unit 7-B is a maximum-security area in which inmates are restrained before they exit their cells.  ECF 24-4, ¶ 4.  More than one inmate may go to recreation at a time, but all are restrained.  *Id.* ¶ 5; ECF 1, at 3.  Still, inmates in the three-piece restraints "can and do assault other inmates and correctional staff."  ECF 24-4, ¶ 6.

On March 25, 2020, Ogunbiyi and Oyekoya escorted Floyd out of his cell for recreation time.  ECF 1, at 3.  He was placed in "hand and feet restraints" upon exiting his cell, in accordance with standard procedure.  *Id.* at 2–3.  At the same time Floyd was let out, Ogunbiyi and Oyekoya also let inmate Carlton Arrington out of his cell, which was located in the same tier.  *Id.*  According to Floyd, they did not secure Arrington in the same restraints and allowed him "to walk around the tier freely."  ECF 7, at 2; *see* ECF 1, at 2–3.  Ogunbiyi and Oyekoya attest that both inmates were properly restrained.  ECF 24-4, ¶ 7; ECF 24-5, ¶ 9.

Arrington assaulted Floyd.  ECF 1, at 2–3; ECF 7, at 2.  Floyd states that he tried to protect himself from Arrington's punches but could not because of the restraints. ECF 1, at 3; ECF 7, at 3.  Ogunbiyi and Oyekoya state that Floyd "squared off to defend himself," but did not hit Arrington.  ECF 24-4, ¶ 3; ECF 24-5, ¶ 3.  Floyd suffered a swollen eye and "bust[ed] lip."  ECF 1, at 3.

Both inmates were escorted to medical for evaluation and were advised that each of them would receive a Notice of Inmate Rule Violation ("NOIRV").  ECF 24-5, ¶¶ 3, 4.  In Floyd's NOIRV, Ogunbiyi reported that Arrington walked over to Floyd and punched him "a few times" and Floyd "squared off to defend him self [sic]," but Floyd did not hit Arrington.  ECF 24-3, at 2.  Ogunbiyi immediately called a "10-10 code" that an inmate fight was in progress and ordered both Floyd and Arrington to stop fighting, which they did.  ECF 24-3, at 2.  Floyd was charged with violations of Rule 102 (commit assault or battery on an inmate) and Rule 105 (participate in reckless behavior or horseplay).  *Id.*  Captain Enyioma, the shift supervisor, approved the NOIRV

for a formal hearing and recommended that Floyd be held in administrative segregation pending his hearing.  ECF 24-6, ¶ 4; *see* ECF 1, at 3.  Enyioma recommended segregation for Floyd's and Arrington's safety and the overall security of MRDCC.  ECF 24-6, ¶ 5.  The following day, at Floyd's hearing, the institution decided not to pursue the violations and both charges were dismissed.  ECF 24-3, at 7.

Floyd asserts that the charges were based on false statements, and therefore, the defendants violated his rights under the Fourteenth Amendment.  ECF 1, at 3.  He also claims Ogunbiyi and Oyekoya failed to protect him, in violation of his Fourteenth Amendment rights.  *Id.*  Finally, he claims that Enyioma's failure to adequately train and supervise his subordinates, Ogunbiyi and Oyekoya, caused the alleged constitutional violations.  ECF 7, at 3.

## II.   Standard of Review

The defendants move to dismiss the complaint for failure to state a claim, or alternatively, for summary judgment.  Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted."  *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court.  *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plausible claim is more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader.  *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022).  The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Accordingly, the Court must construe *pro se* pleadings liberally.  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021).  A *pro se* complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'"  *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs.  *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c).  The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b).  When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

The Court notified Floyd that he had the right to respond to the defendants' motion, that the motion could be construed as one for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond.  ECF 25.  Moreover, the defendants' motion, which identifies summary judgment as possible relief, provided sufficient notice for Floyd to have a reasonable opportunity to present relevant evidence in support of his position.  *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).  To date, Floyd

4

has not filed a response to the defendants' motion. Still, the Court is satisfied that Floyd has been advised that the defendants' motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion.[2] The Court will resolve the motion in part under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most

---

[2] Although Floyd did not respond to the motion, his complaint and supplement are verified and based on his personal knowledge. ECF 1, at 5; ECF 7, at 4. They are equivalent to opposing affidavits for summary judgment. *See Davis v. Zahradnick*, 600 F.2d 458, 459–60 (4th Cir. 1979).

favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III. Discussion

#### A. Official Capacity Claims

The defendants assert that they, as State of Maryland employees, are immune from claims against them in their official capacities under the Eleventh Amendment. ECF 24-1, at 16–17. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Even if the State does not consent, Eleventh Amendment immunity does not bar suit: (1) when it is abrogated by Congress; and (2) when the plaintiff seeks "prospective injunctive relief against state officials acting in violation of federal law." *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)). These exceptions do not apply here. Floyd's claims against the defendants in their official capacities are barred by the Eleventh Amendment and are dismissed without prejudice.

#### B. Failure to Protect

Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within

6

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of . . . inmates." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The protections afforded convicted prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983)).

To prevail on a failure-to-protect claim, the plaintiff must show first, that the deprivation of protection from harm was an "extreme deprivation" that "was *objectively* 'sufficiently serious,'" and second, that "*subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993) (first emphasis in *De'Lonta*; second emphasis in *Strickler*); *Younger v. Crowder*, --- F.4th ----, 2023 WL 5438173, at *6 (4th Cir. Aug. 24, 2023); *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The plaintiff can establish the objective element by showing either "'a serious or significant physical or emotional injury resulting from the challenged

7

conditions'" or "a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (quoting *Strickler*, 989 F.2d at 1381, and citing *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).  The objective inquiry requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36.  "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015).  Then, the detainee "must show that [the defendant] 'subjectively recognized' and ignored this risk." *Younger*, --- F.4th ----, 2023 WL 5438173, at *6 (quoting *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021)); *see Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) (court must determine whether the defendant "is aware of the existence of a general risk" and also knows that his "conduct is inappropriate in light of that risk").

"[C]onduct that amounts to 'deliberate indifference' . . . is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 & n.11 (4th Cir. 2004) (quoting *Young*, 238 F.3d at 575).  This is "a very high standard" that requires more than "a showing of mere negligence." *Id.* at 302 (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)).  The Supreme Court delineated the difference between tort liability and liability for a constitutional violation:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See Prosser and Keeton* §§ 2, 34, pp. 6, 213–214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680; *United States v. Muniz*, 374 U.S. 150 (1963). But an official's failure to alleviate a significant risk that he should have

8

> perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837–38.

The defendants contend that they are entitled to judgment on Floyd's failure-to-protect claim because he has not offered any evidence that they knew about the risk Arrington posed to Floyd and ignored it. ECF 24-1, at 12–13. They admit there is a factual dispute about whether Ogunbiyi and Oyekoya restrained Arrington when he was taken out of his cell for recreation, but they argue the dispute is immaterial because detainees "can and do" attack each other with restraints on. *See* ECF 24-4, ¶ 6. Floyd offers no contrary evidence. The issue, therefore, is whether Floyd has offered any evidence that Ogunbiyi and Oyekoya knew that Arrington posed a substantial risk of serious harm to him when they brought both men out of their cells for recreation at the same time. There is no evidence of this. Floyd does not state that he had an antagonistic history with Arrington that either defendant knew about or that he had reported to them that Arrington had threatened him. The uncontroverted evidence is that when Ogunbiyi saw Arrington punch Floyd, he immediately ordered that Floyd and Arrington stop fighting. Both men complied with the order, and the incident ended without any additional harm to Floyd. Even when the facts are viewed in the light most favorable to Floyd, the Court finds Ogunbiyi and Oyekoya are entitled to judgment as a matter of law on the failure-to-protect claim.

Floyd's claim against Captain Enyioma fails as a matter of law for different reasons. Floyd alleges Enyioma, a supervisor, failed to protect him by not properly supervising and training Ogunbiyi and Oyekoya. Officials like Enyioma may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*,

451 F.2d 1011 (4th Cir. 1971)); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  There is no *respondeat superior* liability under § 1983.  *Love-Lane*, 355 F.3d at 782.

To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury.  *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Floyd's claim against Enyioma—that he failed to protect him by not properly supervising and training Ogunbiyi and Oyekoya—fails because the Court has found that Enyioma's subordinates did not violate Floyd's constitutional rights.  *See Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th Cir. 2001).  Without an underlying constitutional violation by a subordinate, a supervisor cannot be liable under § 1983.  *Id.*

Even if Floyd had a viable constitutional claim against Eniyoma's subordinates, Floyd has not offered any evidence that Eniyoma failed to properly supervise and train them.  He has not shown that Enyioma knew that his subordinates' actions posed a pervasive and unreasonable risk that Floyd would be assaulted by Arrington or that he tacitly authorized their conduct.  Accordingly, Floyd's claim that Enyioma failed to properly supervise or train his subordinates fails as a matter of law.

Enyioma is entitled to summary judgment on the failure-to-protect claim against him.

### C. Due Process

Floyd claims that his due process rights under the Fourteenth Amendment were violated when Ogunbiyi wrote a false NOIRV report and Enyioma approved it, leading to a formal disciplinary hearing. To prevail on a due process claim, a plaintiff first must establish the existence of a property or liberty interest for which "procedural protections are due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Then, the plaintiff must show the defendants deprived him of that interest without providing him with the protections he was due. *Id.*

Pretrial detainees retain a liberty interest in freedom from punishment. *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979). "Though '[l]oss of freedom of choice and privacy are inherent incidents' of pretrial detention, discrete 'punitive measures' imposed during pretrial detention intrude on a protected liberty interest." *Dilworth v. Adams*, 841 F.3d 246, 251 (4th Cir. 2016) (quoting *Bell*, 441 U.S. at 537). The Fourth Circuit has held, however, that generally "a false disciplinary charge cannot serve as the basis for a constitutional claim." *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (noting that there may be exceptions where the action is retaliatory or arbitrary) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)).

Floyd's due process claim fails as a matter of law because the charges against him were dismissed the day after his hearing and he was not punished. Because he was not punished, no liberty interest was implicated.

Ogunbiyi and Enyioma are granted summary judgment on Floyd's due process claim.

### IV. Conclusion

By separate Order that follows, the defendants' motion, treated in part as a motion to dismiss and in part as a motion for summary judgment, is granted. The claims against the

defendants in their official capacities are dismissed without prejudice, and judgment is entered in favor of the defendants on all claims against them in their individual capacities.

August 30, 2023
Date

                                                Deborah L. Boardman
                                                United States District Judge